FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 10, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MATTHEW S., <br> Plaintiff, <br> v. <br> COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br> Defendant. | No. 2:19-cv-00017-SAB <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 11, and Defendant's Cross-Motion for Summary Judgment, ECF No. 12. The motions were heard without oral argument. Plaintiff is represented by David L. Lybbert; Defendant is represented by Assistant United States Attorney Timothy Durkin and Special Assistant United States Attorney Ryan Ta Lu.

**Jurisdiction**

On April 30, 2015, Plaintiff filed an application for Title II disability insurance benefits as well as a Title XVI application for supplemental security income. Plaintiff alleges an onset date of February 7, 2013.

Plaintiff's application was denied initially and on reconsideration. On July

12, 2017, Plaintiff appeared and testified at a video hearing in which he participated in Wenatchee, Washington before an ALJ presiding in Seattle, Washington. William H. Weiss, vocational expert, provided testimony as well as Plaintiff's mother, Joan Schauerman. The ALJ issued a decision on March 5, 2018, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied the request on November 15, 2018. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on January 11, 2019. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Id.*; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1509. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step. Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 404.1520(g). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform

other substantial gainful activity. *Id.*

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Statement of Facts

At the time of the hearing, Plaintiff was 38 years old. He has not worked since 2013, when he was involved in a single car accident in which he lost consciousness and dislocated his hip. He had surgery on his hip and was released to a rehabilitation facility for a period of time. Plaintiff is morbidly obese. He gained significant weight since his accident. He weighs over 300 lbs. He asserts

he is unable to work due to the constant pain in his hip and back. He has trouble standing and sitting.

Prior to his accident, he worked as a carpet cleaner and forklift driver, as well as a few temporary jobs with a temp agency. He has had five or six serious car accidents—four of them rollovers—in which he lost consciousness. At the hearing, he denied having any head injuries, but he indicated he has difficulty focusing and concentrating because of the pain. When questioned he denied getting upset and yelling at his mom.

Plaintiff lives alone. His mother purchased the house for him, and family members help with the bills. He testified that he can spend only five minutes at a time on housework and he can no longer do yardwork. He admitted that trash and garbage have accumulated in his house and admitted to going for days without a bath because of the condition of the house, but stated he tries to take regular baths.

He testified he can drive, but has trouble getting in and out of his car. He would like to use a cane, but he had to return the one he had to the charity that had loaned it to him after his accident. He spends most of his day in bed. He can only sit for five minutes. He can microwave food, but not much more than that.

His mother testified at the hearing outside the presence of Plaintiff. AR 50. She stated that she sees Plaintiff every two to three weeks, or two to three months, when she travels. She stated that Plaintiff is not welcome in most places and he never goes to see anyone so she always goes to see him. She testified that sometimes Plaintiff showers and then there are times when he goes two to three weeks without showering. She testified that he did not have hot water in his house. She explained that when he does laundry, it is usually about 4 to 5 items at a time, since the unit is small. She introduced pictures that showed Plaintiff's bed, which consisted of two mattresses and two box springs on the floor. While the ALJ characterized the pictures as "kind of a poor housekeeping," Plaintiff's mother characterized it as a "landfill" and explained that there were recluse spiders, black

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

widows, and black flies in the house. AR 55. She hired someone to go into the house to empty it of all the trash. So far, they had accumulated nearly 50 yards of trash, along with four trailer loads. She testified that Plaintiff reacts badly to criticism. He yells, screams, curses, and battles, and makes accusations that it is always his mother's fault. He told her she was not welcome in his house. She finally demanded that she be let in or she was going to evict him. When she got in, she took the pictures and then took action to clean the house out.

She stated that Plaintiff's statements to Dr. Genthe that he was taking care of himself were not accurate, especially given that the pictures she took were in December 2016, and Dr. Genthe examined Plaintiff in November 2016. She stated that in order to get out of bed, he must get on his hands and knees and crawl to the wall.

She explained that while Plaintiff has always had trouble staying on task and problems socializing his entire life, these problems became much worse after his latest car accident. She tried to take him to the doctor for mental health treatment on numerous occasions, but when they start asking personal questions, he gets up and leaves. She has been trying to get him to seek mental health treatment for years, but he refuses. She does not believe Plaintiff to be honest with his treatment providers regarding his mental health struggles.

She described that it can be difficult to have a conversation with Plaintiff because he is interacting with someone in his head with whom he is talking and to whom he listens. Plaintiff has described it to her as having a storyline of a TV show in his head in which he believes he was raped when he was a child and that ever since then, he has been filmed 24/7. Plaintiff has told her that he cannot do things because it is not in the script.

Plaintiff's mother explained to the ALJ that she was at Dr. Genthe's examination and that Plaintiff was not upfront with the doctor regarding his depression and other issues, including the running TV script in his head. He does

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

not divulge this type of information to others. She specifically testified that Plaintiff's statements to Dr. Genthe that he was taking good care of his hygiene, taking regular baths and showers, brushing his teeth, able to prepare his own meals and feed himself, independently washing dishes, doing laundry, vacuuming, and dusting were not true. AR 57-58.

### The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act though December 31, 2017. AR 17. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 7, 2013. AR 17.

At step two, the ALJ found Plaintiff has the following severe impairments: obesity, status post motor vehicle accidents with left hip degenerative joint disease and left lower extremity fracture with open reduction internal fixation, status post cerebral trauma, and degenerative disc disease. AR 17.

At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal any Listing. AR 22.

The ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work, as defined in 20 CFR § 4567(a) and § 416.967(a), with some exceptions. He can frequently balance and stoop, occasionally climb ramps, kneel, crouch, and crawl, and cannot climb ladders, ropes or scaffolds. He must avoid concentrated exposure to extreme heat and cold, and to vibrations and hazards. AR 22. At step four, the ALJ found that Plaintiff is incapable of performing any past relevant work. AR 29.

At step five, the ALJ found Plaintiff was not disabled on the basis that he could perform other work which exists in significant numbers in the national economy, including positions such as production assembler, electronics worker, and packing line worker. AR 30.

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

**Discussion**

In denying benefits, the ALJ relied primarily the following conclusions: (1) Plaintiff's most serious mental health symptoms were observed in the context of his efforts to obtain and maintain state benefits or shortly after the motor vehicle accident; (2) a March 2015 orthopedic examination was generally unremarkable, (3) lack of treatment records and (4) Dr. Genthe's mental health examination that indicates Plaintiff functions in the average or low average range in most of the testing with mild limitations.

The ALJ found that the testimony and statements of Plaintiff's mother were inconsistent with the evidence in the record. This was in error. The ALJ does not address the photographs that were taken of the condition of Plaintiff's house that suggest that Plaintiff is unable to live independently. Plaintiff's mother stated that Plaintiff will yell, scream and curse in response to criticism. This is supported by the record. Dr. Genthe reported that during the examination, Plaintiff addressed his mother with profanity. AR 619. There are other instances in the record where it was reported that Plaintiff cursed at his mother. AR 353. Also, in 2015 Plaintiff abruptly left treatment even though he was suffering from bronchitis. AR 64. Plaintiff's mother's testimony is adequately supported by the record and the ALJ should have taken it into account. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

The ALJ did not address the apparent lack of insight on the part of Plaintiff. For instance, Dr. Genthe reported that Plaintiff told him that he does not have any mental health problems. AR 615. Yet the record is replete with specific instances where Plaintiff was mumbling, had circular reasoning, and various health providers expressed concern for his mental health. AR 411, 414. Dr. Genthe noted that Plaintiff frequently talked about subjects that had nothing to do with the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

question asked or made up answers. AR 619. Dr. Genthe believed Plaintiff was acting immature and was argumentative. AR 619. The ALJ failed to address whether these behaviors would be accepted in the workplace.

Notably, the ALJ indicated he would order a consultative examination in which Plaintiff's impulsivity and immaturity, his ability to deal with distraction, and his ability to focus and concentrate would be evaluated. AR 66. This was never done.

At the minimum, the ALJ should have followed through with a consultative examination to evaluate Plaintiff's ability to deal with distraction as well as his ability to focus and concentrate, given the inconsistencies and ambiguities in the record and to determine whether Plaintiff suffers from a personality disorder. An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id*. (citations omitted). Here, given Plaintiff's tendency to not be forthright with his treatment providers, his impulsivity, and his history of walking out of examinations when personal questions are asked, effort must be taken to ensure that the record is complete.

Thus, it is necessary to remand this case so a consultative examination can take place to address Plaintiff's mental condition, including evaluation of Plaintiff's ability to deal with distraction, his ability to focus and concentrate, whether he is hearing voices in his head and whether Plaintiff suffers from a personality disorder. In remanding, care should be given to evaluate Plaintiff's statements due to lack of insight or his refusal to be forthright with his evaluators. The consultative examiner should consider Plaintiff's mother's statement and/or consult with Plaintiff's mother outside the presence of Plaintiff.

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **GRANTED**.
2. Defendant's Motion for Summary Judgment, ECF No. 12, is **DENIED**.
3. The decision of the Commissioner is **reversed** and **remanded** for further administrative proceedings consistent with this Order. On remand, the ALJ shall offer Plaintiff an opportunity for a new consultative examination, further develop the record, and issue a new decision. This remand is made pursuant to sentence four of 42 U.S.C. § 405(g).
4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 10th day of October 2019.



Stanley A. Bastian
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10